

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-425-CR

DEMETRIUS DEREK INGRAM, JR.                        APPELLANT

V.

THE STATE OF TEXAS                                 STATE

------------

FROM COUNTY CRIMINAL COURT NO. 1 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Demetrius Derek Ingram, Jr. appeals his conviction for violation of a protective order.[2] He contends in one point that the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Penal Code Ann. § 25.07(a)(3)(B) (Vernon Supp. 2009).

## II. Background

On July 24, 2008, a Denton County district court entered a two-year protective order against Appellant. In the protective order, the trial court found that family violence had occurred and would likely occur in the future. Among other things, the protective order prohibited Appellant from "going within 200 yards of the residence of Ashley Danette David and Ashley Danette David on behalf of Ka'mya Desiree David." Appellant appeared in person for the hearing and signed the protective order, approving its form and content.

Ashley David testified that she and Appellant previously dated, that Ka'mya is her daughter, and that Appellant is Ka'mya's father. Ashley testified that Ka'mya lived with Bridgette David, Ka'mya's grandmother, in May 2009. Ashley said that she lived with her friend, Brenda Neal, at the time. Ashley testified that Ka'mya is a protected person under the protective order, that Ka'mya's permanent address in May 2009 was Bridgette's house, and that Ka'mya's permanent address did not change, even if Ashley's did.

Bridgette testified that Ka'mya had lived with her since birth. She said that when she arrived home on May 9, 2009, there was a note on her door that stated: "This [Appellant]. I came by to see Ka'mya."[3] Bridgette testified that

---

[3] Ashley testified that the note is in Appellant's handwriting.

about forty-five minutes after she discovered the note, Appellant knocked on her front door. Bridgette called 9-1-1 and spoke with the responding officer shortly thereafter. Bridgette testified that Appellant was within 200 yards of Ka'mya's residence when he knocked on her door.

Bridgette also testified that she had recently developed a good relationship with Appellant. She said that Appellant had visited Ka'mya at her house after May 9, 2009, and that she and Appellant had come to an agreement that he should be allowed to see his child. She testified that she called the police on May 9, 2009, however, because she had not yet developed a relationship with Appellant. Bridgette also testified that she first learned of the permanent protective order on May 9, 2009, and that she now understands that she cannot waive or voluntarily disobey parts of the protective order.

Officer Eric Beckwith, the officer who responded to Bridgette's 9-1-1 call, testified that Ka'mya was at Bridgette's house when he spoke with Bridgette on May 9, 2009. Officer Beckwith agreed that Bridgette's address is not listed on the protective order and that he could not say how Appellant would know what the protected addresses are if the order lists them as confidential and Ashley resides in several places. However, he also testified that Ashley's address is irrelevant because Ka'mya's address did not change and because she is a protected person under the order.

3

Appellant pleaded not guilty to violating the protective order at his trial in November 2009. The jury found him guilty of violating the protective order, and the trial court sentenced Appellant to 270 days' confinement. This appeal followed.

### III. Standards of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at

4

414–15, 417.  To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict.  *Watson*, 204 S.W.3d at 417.

Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.  Evidence is always factually sufficient when it preponderates in favor of the conviction.  *Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

## IV.  Analysis

Appellant contends that the evidence is legally and factually insufficient to support the jury's guilty verdict.

### A.  The Evidence is Legally Sufficient

A person commits the offense of violation of a protective order if he knowingly or intentionally "goes to or near" a residence where a child resides if that child is protected by a protective order.  Tex. Penal Code Ann. § 25.07(a)(3)(B).

Here, Appellant signed the protective order, approving its form and content, and Ashley and Bridgette testified that Ka'mya, a protected person under the order, resided with Bridgette. The jury heard testimony that on May 9, 2009, Appellant went within 200 yards of Bridgette's house, left a note, and later knocked on Bridgette's front door. The note states, "This [Appellant]. I came by to see Ka'mya." This evidence is legally sufficient to support the jury's finding that Appellant intentionally or knowingly went to or near a residence where Ka'mya resided. *See id.*; *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. We overrule the portion of Appellant's first point that challenges the legal sufficiency of the evidence.

B. The Evidence is Factually Sufficient

Reviewing all the evidence in a neutral light, we recall that the jury heard testimony that Ashley resided in as many as three different places, that Ka'mya's address was designated as confidential in the protective order, that Bridgette's address was not specifically listed in the protective order, and that Bridgette had allowed Appellant to visit Ka'mya at her house. However, the jury also heard evidence that Appellant was aware of the protective order because he signed it, that Appellant went to Bridgette's house on May 9, 2009, that Ashley's resident address is irrelevant because Ka'mya is a protected person under the order, that Ka'mya's address did not change, and that

6

Bridgette did not previously know that she could not allow Appellant to visit Ka'mya with the protective order in place.

Viewing the evidence in a neutral light, we conclude that the jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly went to or near a residence where Ka'mya resided. *See* Tex. Penal Code Ann. § 25.07(a)(3)(B). We cannot say that the evidence is so weak that the jury's determination is clearly wrong or manifestly unjust or that the conflicting evidence so greatly outweighs the evidence supporting the conviction that the jury's determination is manifestly unjust. *See Lancon v. State*, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. We therefore hold that the evidence is factually sufficient to support the jury's verdict. We overrule the remainder of Appellant's sole point.

## V. Conclusion

Having overruled Appellant's sole point, we affirm the trial court's judgment.

ANNE GARDNER
JUSTICE

PANEL: GARDNER, WALKER, and MEIER, JJ,

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2010